UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN THOMAS, on behalf of himself
and others similarly situated,**

      **Plaintiff,**

  v.                                **Case No.: 2:21-cv-5472
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson**

**CANDID CARE CO.,**

      **Defendant.**

**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiff's Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs. (ECF No. 16.) Defendant Candid Care Co. opposes conditional certification, and, in the alternative, seeks to narrow the scope of Plaintiffs' putative class. (ECF No. 19.) Plaintiff has filed a Reply in support of his motion (ECF No. 20). For the following reasons, the Court **GRANTS** Plaintiff's Motion for Conditional Class Certification and **ORDERS** expedited discovery and opt-in notices as delineated in this decision. (ECF No. 16.)

**I.**

Defendant Candid Care Company is a manufacturer of clear aligners and provider of support and administrative services to dental practitioners. (Def.'s Mem. in Opp., Shaffer Decl., ECF No. 19-1.) Defendant sells its products either directly to the consumer or through a network of orthodontists. (Pl.'s Mot.) To provide its aligners and related services, Candid employs a number of individuals in various capacities, including dentistry, sales, engineering and product

1

design, marketing, operations, management, and customer and patient support. (Def.'s Mem. in Opp., Shaffer Decl., ECF No. 19-1.)

Plaintiff Kevin Thomas, in addition to five individuals who have opted in to the putative class action,[1] are all former telephone-based customer service employees employed by Defendant at some point during the three years preceding the filing of this civil action. (Pl.'s Mot., ECF No. 16.) Plaintiff was employed by Candid as an "Active Care Specialist" from May 2019 to September 2021, and during that time, he avers that he routinely worked 40 hours or more per workweek and was not paid overtime. (Pl.'s Mot., Thomas Decl., ECF No. 16-2; Compl., ECF No. 1.)

Plaintiff alleges that he and those he seeks to represent were hourly, non-exempt telephone-based customer service employees who performed compensable work outside of their scheduled shift, for which they were not paid in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. First, Plaintiff alleges that Defendant had a policy requiring the proposed class to be fully logged in and ready to take customer calls at the exact start time of their scheduled shift. (*Id.*) In order to adhere to this policy, Plaintiff and the putative class had to first turn on their computers, log into several software applications necessary to the performance of their primary job duties and respond to any work-related emails or other outstanding issues prior to the start of their scheduled shift. (*Id.*; Compl., ECF No. 1.) The alleged time required to perform these tasks ranged from 10 minutes (Coleman and Pace Decls., ECF Nos. 16-3 and 16-

---

[1] These Opt-In Plaintiffs include Vincenza Coleman (ECF No. 16-3), Kiera Defoor (ECF No. 16-4), Julius Kissinger (ECF No. 16-5), Chauncey Pace (ECF No. 16-6), and Alexander Thomas (ECF No. 21-1). Four of these plaintiffs— all but Alexander Thomas—have filed declarations in support of Plaintiffs' Motion for Conditional Certification. (*See* Coleman Decl., ECF No. 16-3; Defoor Decl., ECF No. 16-4; Kissinger Decl., ECF No. 16-5; Pace Decl., ECF No. 16-6.)

6) to 1 hour (Thomas Decl., ECF No. 16-2). Plaintiffs assert that Defendant did not compensate them for this time. (Compl., ECF No. 1.)

Second, Defendant allegedly required the proposed class to monitor and respond to messages posted on Slack (an office-focused messaging application) regardless of whether they were on or off the clock. (*Id.*) Plaintiff states that Defendant did not compensate him or the proposed class for the time they spent monitoring and responding to Slack messages when they were off the clock. (*Id.*)

Plaintiff maintains that Defendant knowingly and willfully failed to pay him and the proposed class for the work detailed above, which includes overtime compensation for the hours worked in excess of 40 each workweek. (*Id.*)

## II.

Traditionally, courts in the Sixth Circuit follow a two-stage certification process to determine whether a proposed group of plaintiffs is "similarly situated" such that a collective action is appropriate. The first, or "notice" stage, takes place at the beginning of discovery with a focus on determining whether there are plausible grounds for the claims. *Taylor v. Pilot Corp.*, 697 Fed. Appx. 854, 857 (6th Cir. 2017) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). The Sixth Circuit explains:

> At this point, the court conditionally decides which employees count as being "similarly situated" to the plaintiff and thus eligible to receive a court-approved letter. *See id.* (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 167–68 (1989)). Courts and litigants often refer to this stage as "conditional class certification." *See, e.g., id.* Unlike actual class certification under Rule 23, however, its only effect is to allow notice to the employees—the "conditional-class members" do not become parties or obtain any "independent legal status." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013).

*Id.* (parallel citations omitted).

If the trial court determines the class should be conditionally certified, plaintiffs are permitted to solicit opt-in notices, under court supervision, to potential plaintiffs such as current and former employees of the defendant. Because the statute of limitations on an FLSA claim continues to run until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. *Lewis v. Huntington Nat'l Bank,* 789 F.Supp.2d 863, 867 (S.D. Ohio 2011).

The first stage is "fairly lenient," requiring only that the plaintiffs show a colorable basis for their claim that a class of similarly situated plaintiffs exists. *White v. MPW Indus. Serv., Inc.,* 236 F.R.D. 363, 366–67 (E.D. Tenn. 2006) (internal citations omitted); *Olivo v. GMAC Mortg. Corp.,* 374 F.Supp.2d 545, 548 (E.D. Mich. 2004); *see also O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 584 (6th Cir.2009) (explaining that the FLSA's "similarly situated" requirement is less stringent than the Fed. R. Civ. P. 23(b)(3) requirement that common questions predominate) abrogated on other grounds in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016)). "[A]uthorization of notice need only be based on a modest factual showing, [and] this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Comer,* 454 F.3d at 547 (6th Cir. 2006) (cleaned up).

On the other hand, the second-stage review is understandably more stringent as it occurs after the receipt of completed opt-in notices and completed discovery. *Comer,* 454 F.3d at 546. At this point, a court considers all the evidence, in conjunction with the demographic data of the putative opt-in plaintiffs, to determine whether the assembled class is sufficiently "similarly situated" to continue as a collective action or whether the putative class should be "decertified,"

4

leaving plaintiffs free to pursue their claims on an individualized basis. *White v. MPW Indus. Serv., Inc.,* 236 F.R.D. 363, 366–67 (E.D. Tenn. 2006).

### III.

Plaintiff requests conditional certification of the following class:

> All current and former hourly, non-exempt telephone-based customer service employees employed by Defendant at any time in the three years preceding the date of the filing of this Action to the present, who worked 40 or more hours in any workweek and in the same workweek booted up their computer, logged into software programs, or reviewed emails prior to the start of their shift, or monitored or responded to messages on Slack.

In support of his Motion for Conditional Class Certification, Plaintiff relies on the allegations within the Complaint, the Plaintiff's sworn declaration regarding Defendant's pay practices and, the sworn declarations of four additional Potential Opt-In Plaintiffs, all of which reiterate Plaintiff's base allegations. (*See* ECF Nos. 16, 16-2, 16-3, 16-4, 16-5, 16-6.)

Defendant, in response, urges the Court to deny Plaintiffs' Motion, arguing that (A) Plaintiffs have provided insufficient supporting evidence to determine that the putative class is similarly situated to Plaintiff, and, in the alternative, (B) Plaintiff has asked for a class that is too broad in time and geographic location and (C) Plaintiff's proposed notice is also too broad.

**A.     Similarly Situated**

Defendant posits that Plaintiff has not met his burden to show that he and the putative class members are similarly situated because they did not perform the same jobs and were not subject to the same pay polices, that if an employee worked overtime for which he was not compensated Defendant had no knowledge of this, and that some of the putative class signed FLSA waivers.

As to the first argument, Defendant points out that the putative class encompasses employees from three different jobs classifications—Customer Operations Specialist, Candid

5

Support Specialist, and Social Support Specialist—all of whom reported to different supervisors and performed different job duties.  And as to the policy, Defendant contends that its written policy complies with the FLSA and that insofar as a "rogue rule" was allegedly applied by some unnamed manager to Plaintiff, the same cannot be said for the Potential Opt-In Plaintiffs or the putative class members.  Defendant supports this contention with the affidavits of the Potential Opt-In Plaintiff that show that each employee "spent considerably different amounts of time booting up their computer, logging into various software programs, and reviewing or responding to outstanding communications."  (*Id*. at 7) (citing affidavits showing some employees worked 10 minutes before the shift began while others started 15, 20, or even 60 minutes before their shifts began).  Defendant's arguments are not well taken.

Plaintiff and the Potential Opt-In Plaintiffs all contend that they were hourly, non-exempt customer service employees whose "primary job duties were to speak on the phone, by chat, or by email with prospective and current customers, as well as orthodontists, about Candid Care's products and services."  (Thomas Decl., ECF No. 16-2; Coleman Decl., ECF No. 16-3; Defoor Decl., ECF No. 16-4; Kissinger Decl., ECF No. 16-5; Pace Decl., ECF No. 16-6; Compl., ECF No. 1.)  Potential Opt-In Plaintiffs and Plaintiff also assert that they were subject to the same policy, plan, or practice; that is, Defendant's failure to pay them overtime compensation for certain work activities performed in excess of their typical 40-hour workweek. These commonalities link Plaintiff to the Potential Opt-In Plaintiffs and to the putative class, despite having varied job titles and reporting to different supervisors.  It is of no moment that the work performed by the Potential Opt-In Plaintiffs were not exactly the same.  This fact does nothing to dispute that Defendant had a practice of requiring work before the pay shift started.

6

Additionally, Defendant's contention that Plaintiff has failed to show that Defendant was aware of the alleged off the clock activities misses the mark. Plaintiff is not required to put forth evidence of Defendant's knowledge, and until discovery would unlikely possess any evidence of it. In any event, it is sufficient that Plaintiff shows that there is a policy of allowing or requiring off-the-clock work. Here, Plaintiff has met that burden by averring that he was required to be "in queue" and ready to work at the exact start time of their shift. Because of this rule, customer service employees had no choice but to engage in computer work prior to the start of their shift. The Potential Opt-In Plaintiffs declare the same.

Last, Defendant's arguments related to FLSA releases is to no avail. Defendant asserts that "many of Defendant's former Candid Support Specialists and Customer Operations Specialists signed release agreements in connection with a reduction of force," and, given this release agreement, not only do these employees not have a viable claim against Defendant, but they are also too dissimilar from the putative class. (Def.'s Opp'n., ECF No. 19; *see also* Shaffer Decl., ECF No. 19-1.) The rights given under the FLSA, however, "cannot be abridged by contract or otherwise waived because this would 'nullify the purpose; of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 740 (1981) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)); *see also Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F. Supp. 2d 815, 823 (E.D. Mich. 2005) ("The Supreme Court has made clear the rule that rights under the FLSA cannot be abridged, compromised, or waived by private agreement."). Because employees cannot waive their rights via private agreement under the FLSA, Defendant's attempt to distinguish those employees who have signed releases from those who have not is a distinction without a difference in the instant analysis.

7

The Court concludes that Plaintiff has carried his burden to make a "modest factual showing" that he is similarly situated to the putative class. *See Ford*, 2016 WL 2729700, at *2; *see also Comer*, 454 F.3d at 546–47 (citing *Pritchard*, 210 F.R.D. at 595) (noting that plaintiff need not demonstrate that he or she and the putative class members hold "identical" jobs).

**B**     **Limits of the Putative Class**

Defendant argues that the proposed class is overbroad as to its geographic scope and as to the time period it encompasses. As to the geographic scope, Defendant contends:

> Not only does the putative class fail to identify with sufficient particularity the employees it intends to include, it is unlimited in geographic scope, despite the Representative Plaintiff and Opt-In Plaintiffs all being Ohio-based, and despite Plaintiffs offering nothing to the Court to infer that similarly situated employees might exist elsewhere. As a result, the putative class, as defined by Representative Plaintiff, should be limited to Defendant's Ohio-location.

(Def.'s Mem. in Opp. at 10, ECF No. 19.) However, "questions of the breadth and manageability of the class are left until the second-stage analysis following the receipt of forms from all opt-in plaintiffs." *Creely*, 789 F.Supp.2d at 840 (citing *O'Brien,* 575 F.3d at 584–85); *see also Cowan* that the "argument that the collective opt-in group is unmanageable is premature").

Plaintiff has submitted declarations from himself and the Potential Opt-In Plaintiffs. The declarants are all hourly, non-exempt telephone-based customer service employees who are all employed at different plant locations operated by Defendant. All declarants averred that they were not paid for work before their shifts while performing necessary tasks. "If Plaintiffs provide sufficient evidence of a company-wide practice through declarations of present and former employees at other locations, then the court is justified in sending notice to similarly situated employees at all locations in issue in the litigation." *Cowan v. Nationwide Mut. Ins. Co*., No. 2:19-cv-1225, 2019 WL 4667497, *9 (S.D. Ohio Sep. 25, 2019). Here, Plaintiff has

8

provided sufficient evidence of a company-wide practice that justifies sending notice to the similarly situated employees at all Defendant's locations.

Defendant last asks the Court to impose a two-year time limitation because there is no evidence of willfulness on Defendant's part.  This Court has addressed this argument in other cases, explaining that "[w]hether Defendants' alleged FLSA violations are 'willful' is a question better suited for a later stage of the litigation." *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 U.S. Dist. LEXIS 106583, at *16 (S.D. Ohio July 11, 2017); *see also Young v. I Love This Bar LLC*, No. 20cv-3971, 2021 U.S. Dist. LEXIS 73915, at *15 S.D. Ohio Apr. 16, 2021) (same); *Crace v. Viking Grp.*, No. 3:20-cv-176, 2021 U.S. Dist. LEXIS 36129, at *19 (S.D. Ohio Feb. 26, 2021) (same).  The same is true in this case. There is no reason to limit the notice period in this case to two years, as the question of whether Defendant's statutory violations were willful is a question better suited for a later stage of this litigation, after discovery.

**C.      Notice and Discovery**

Plaintiff requests that he be permitted to send notice via email, mail and text message. Plaintiff asks the Court to order Defendant to provide the information to facilitate this in fourteen days from the date of this decision.  Defendant opposes "Plaintiffs' request for the telephone numbers and dates of employment of the putative class members as unnecessary to provide notice and unduly intrusive into the privacy of potential class members."  (Def.'s Mem. in Opp. at 13, ECF No. 19.)  Defendant also "requests that it be provided an additional fourteen days to provide such information" because "Defendant may be unable to provide the information requested within fourteen days of the Court's Order."  *Id*. at 14.

With regard to the discovery, it is common and appropriate to require defendants to provide each potential class members' contact information, including telephone numbers, and the dates of their employment.  It is also common to require defendants to provide this limited discovery within two weeks and, here, Defendant does not contend it cannot do so.  Because the statute of limitations on an FLSA claim continues to run until written consent is filed with the Court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit.  *Lewis v. Huntington Nat'l Bank,* 789 F.Supp.2d 863, 867 (S.D. Ohio 2011); *Snelling v. ATC Healthcare Servs. Inc.*, 2:11-CV-983, 2012 WL 6042839, *6 (S.D. Ohio Dec. 4, 2012); *Cockrell v. Spring Home Health Care LLC*, No. 21-cv-346, 2021 WL 1850702, *5 (S.D. Ohio May 10, 2021); *see also De Angelis v. Nolan Enters. Inc.*, 2:17-cv-926, 2019 WL 6715975, *4 (S.D. Ohio, Dec. 10, 2019) ("Plaintiffs have only requested targeted expedited discovery so that they may ensure that potential plaintiffs receive notice and an opportunity to opt-in before their claims expire. Good cause exists to grant this limited expedited discovery.").  Consequently, the Court will require Defendant to produce the discovery within two weeks.  If, however, Defendant has good reason why it cannot do so, it can petition the Court for a brief extension.

As to the vehicle to provide notice, district courts in the Sixth Circuit generally only authorize two forms of notice delivery—both of which usually consist of postal and electronic mail. *See Hall v. U.S. Cargo & Courier Serv., LLC,* 299 F. Supp. 3d 888, 899-900 (S.D. Ohio 2018); *Brittmon*, 285 F. Supp. 3d at 1044. Thus, for now, Plaintiffs may not use the telephone numbers it receives through discovery for notice purposes. If, however, Plaintiff can demonstrate during the course of discovery that his other notice delivery methods are insufficient to contact a particular potential class member (*i.e.*, that his postal and electronic mail were returned as

undeliverable), the use of text messaging will be permitted. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017); D*eloney v. SK Food Group, Inc.*, 2:21-CV-892, 2021 WL 8651749, at *6 (S.D. Ohio Dec. 20, 2021) (permitting same procedure).

## IV.

For the reasons stated above, the Court **GRANTS** conditional class certification to Plaintiff's proposed class (ECF No. 16) and **ORDERS** expedited discovery and opt-in notice be sent as delineated in this decision.

**IT IS SO ORDERED.**

**9/28/2022**                                              **s/Edmund A. Sargus, Jr.**
**DATED**                                                 **EDMUND A. SARGUS, JR.**
                                                               **UNITED STATES DISTRICT JUDGE**